IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PROBUILDERS SPECIALTY
INSURANCE COMPANY, RRG,

        Plaintiff,

vs.

PHOENIX CONTRACTING, INC., and
FHC, LLC,

        Defendants.

Case No. 6:16-cv-00601-AA
OPINION AND ORDER

AIKEN, Judge:

    This is an insurance dispute. Defendant FHC, LLC ("FHC"), filed a construction defect lawsuit against defendant Phoenix Contracting, Inc. ("Phoenix"), and a number of Phoenix's subcontractors in state court. Phoenix tendered the defense and indemnity of that lawsuit to plaintiff Probuilders Speciality Insurance Company, RRG. Plaintiff agreed to defend Phoenix in state court subject to a full reservation of rights. Plaintiff then filed this action, seeking a declaratory judgment that it had no duty to defend or indemnify Phoenix. Plaintiff now moves for summary judgment. For the reasons set forth below, plaintiff's motion is granted.

PAGE 1 - OPINION AND ORDER

## BACKGROUND

In 2005, FHC contracted with Phoenix to provide general contracting services on a Salem, Oregon construction project known as the Summit Building. As the general contractor, Phoenix was charged with overseeing a number of subcontractors who performed painting, siding, HVAC, roofing, foundation, framing, and windows work. In 2015, FHC discovered a number of construction defects at the Summit Building. Those defects, which included problems with the windows, roof, walls, and siding, led to water intrusion and caused substantial damage. FHC filed suit in Marion County Circuit Court ("the underlying lawsuit), asserting claims for breach of contract and negligence against Phoenix and several subcontractors. The Amended Complaint in the underlying lawsuit alleged that each subcontractor negligently performed work and that Phoenix failed to properly oversee and check that work.

At the time of the Summit Building project, Phoenix was insured by plaintiff under an insurance policy ("the policy"). Pursuant to the policy, plaintiff had the duty to defend Phoenix against any suit seeking tort damages for property damage within the coverage provisions of the policy. Calvert Decl. Ex. 2 at 1. The policy was subject to the following endorsement:

### CONTRACTORS SPECIAL CONDITIONS

As a condition precedent to this policy applying to any claim in whole or in part based upon work performed by independent contractors, the insured must have prior to the date of the loss giving rise to the claim:

(1)     Received a written indemnity agreement from the independent contractor holding the insured harmless for all liabilities, including costs of defense, arising from the work of the independent contractor; and

(2)     Obtained certificates of insurance from independent contractor indicating that the insured is named as an additional insured and that coverage is maintained equal

PAGE 2 - OPINION AND ORDER

to or greater than provided by this policy with limits of at least $1,000,000 per occurrence.

(3) The insured has maintained the records evidencing compliance with subsections 1 and 2.

Compl. Ex. 1 at 119. The Contractors Special Conditions endorsement appeared on a separate page in large-print capital letters. It was signed by Phoenix's authorized representative.

When FHC notified Phoenix of the damage at the Summit Building, Phoenix filed a notice of claim with plaintiff. In its letter acknowledging receipt of the notice of claim, plaintiff stated it would investigate the claim. The letter contained the text of the Contractors Special Conditions endorsement. Below that text, plaintiff stated in bold that, "[t]o the extent Phoenix Contracting used subcontractors and did not comply with the above condition precedent to coverage, PBSIC reserves the right to deny coverage in whole or in part for this loss." Calvert Decl. Ex. 1 at 3. After FHC filed the underlying lawsuit, Phoenix tendered the defense and indemnity of the lawsuit to plaintiff. Plaintiff accepted, subject to a full reservation of rights, and incurred approximately $63,500 in legal fees and costs. Hanavan Decl. ¶ 2 Oct. 25, 2016.

While defending Phoenix in the underlying lawsuit, plaintiff filed this action seeking a declaratory judgment that it had no duty to defend or indemnify. Phoenix and FHC subsequently settled the underlying lawsuit for $250,000. Joint Br. Addressing Jurisdiction 2. This dispute is over whether plaintiff must indemnify Phoenix for that settlement amount.

## STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v.*

PAGE 3 - OPINION AND ORDER

*Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

There are two issues here: whether plaintiff had a duty to defend Phoenix and whether plaintiff has a duty to indemnify Phoenix. Those inquiries are distinct. Whether the insurer has a duty to defend "depends on two documents: the complaint and the insurance policy." *Ledford v. Gutoski*, 877 P.2d 80, 82 (Or. 1994). "An insurer should be able to determine from the face of the complaint whether to accept or reject the tender of the defense of the action." *Id.* The duty to defend is broad and applies "if the complaint provides *any basis* for which the insurer provides coverage." *Id.* at 83 (emphasis in original). "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Id.*

The duty to indemnify is independent of the duty to defend. *Id.* at 84. If the lawsuit settles, the duty to indemnify is determined on the basis of "the facts that formed the basis for the settlement." *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 293 P.3d 1036, 1044 (Or. 2012). "[T]o find the ultimate facts forming the basis for the settlement," the court "look[s] to allegations in the underlying lawsuit and any evidence developed in defending or supporting those allegations." *Chartis Specialty Ins. Co. v. Am. Contractors Ins. Co. Risk Retention Grp.*, 2014 WL 3943722, *5 (D. Or. Aug. 12, 2014).

Plaintiff contends it had neither a duty to defend nor a duty to indemnify because Phoenix did not comply with the Contractors Special Conditions, a condition precedent to coverage for all claims arising in whole or in part from the work of subcontractors.

I.   *Jurisdiction*

As a threshold matter, defendants contend that this Court lacks jurisdiction to determine whether plaintiff had a duty to defend because that question became moot after the underlying lawsuit settled. Whether plaintiff had a duty to defend is not moot. As noted, plaintiff asserts it incurred $63,500 defending Phoenix in the underlying lawsuit. Though plaintiff has not asked this Court for a declaration is it entitled to reimbursement of those costs, a determination it had no duty to defend could give rise to such a claim. *See St. Paul Mercury Ins. Co. v. Ralee Eng'g Co.*, 804 F.2d 520, 522 (9th Cir. 1986). I express no opinion on the merits of such a claim at this time. However, the possibility of a viable claim supplies this Court with jurisdiction.

II.   *Merits of Plaintiff's Claims*

The parties disagree about who bears burdens of production and proof in this case. Burden allocation rules are substantive rather than procedural. *Dick v. N.Y. Life Ins. Co.*, 359 U.S. 437, 446 (1959). As a result, federal courts apply state burden allocation rules when adjudicating claims brought under state law. *See Hanna v. Plummer*, 380 U.S. 460, 465 (federal courts apply state substantive and federal procedural law to state-law claims). In Oregon, the general rule is that the insured has the burden to prove coverage and the insurer has the burden to prove an exclusion from coverage. *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 241 P.3d 710, 716 (Or. 2010). However, that general rule applies to the usual case in which the insured sues the insurer in a coverage dispute. The rule changes when "the party that ordinarily would not have the burden of

PAGE 5 - OPINION AND ORDER

proof on a claim or affirmative defense brings a declaratory judgment action . . . to prove nonliability on a claim[.]" *Id.* at 721. In such a case, where "the parties are transposed," the Oregon Supreme Court has held that "the plaintiff in the declaratory judgment action has the burden to prove its affirmative allegations, even though it ordinarily would not have the burden of doing so." *Id.*; *see also First Nat'l Bank v. Malady*, 408 P.2d 724, 726 (Or. 1965) ("We adopt the rule that in most of the declaratory judgment cases the plaintiff initiating the action and who makes affirmative allegation must bear the burden of proving what he alleges.") As the party who filed this lawsuit, plaintiff has the burden of production and persuasion regarding its affirmative allegations that (1) Phoenix did not comply with the Contractors Special Conditions and (2) the claims in the underlying lawsuit fall within the Contractors Special Conditions endorsement.

Plaintiff has met its burden with respect to the first allegation. It introduced evidence that Phoenix did not comply with any of the three Contractors Special Conditions, and that plaintiff knew about that noncompliance before the underlying lawsuit was filed. *See* Hanavan Decl. ¶ 3 Jul. 15, 2016. Phoenix does not dispute that evidence. Instead, Phoenix argues that the Contractors Special Conditions do not apply to the claims in the underlying lawsuit.

The interpretation of an insurance policy is a question of law. *Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.*, 836 P.2d 703, 706 (Or. 1992). "The primary and governing rule of the construction of insurance contracts is to ascertain the intent of the parties" based on the terms and conditions of the policy. *Id.* (quoting *Totten v. N.Y. Life Ins. Co.*, 696 P.2d 1082, 1086 (1985)).

> The intent of the parties is determined by a three-step process. First, we examine the text of the policy to determine whether it is ambiguous, that is, whether it is susceptible to more than one plausible interpretation. If it is not, the policy is interpreted in accordance with that unambiguous meaning. If the text of the policy includes any definitions of disputed terms included in the policy, we must construe

PAGE 6 - OPINION AND ORDER

the policy in accordance with those definitions. If the policy does not define the terms in dispute, we invoke assumptions about ordinary meaning and other aids to construction. If the text of the policy is ambiguous, we proceed to the second step, that is, we examine the disputed terms in the broader context of the policy as a whole. Finally if, after construing the terms in the broader context of the policy as a whole, ambiguity remains, we construe the policy against the drafter[.]

*Employers Ins. of Wasau v. Tektronix, Inc.*, 156 P.3d 105, 123 (Or. Ct. App. 2007) (citations and quotation marks omitted).

Here, there is no textual ambiguity. The endorsement labels the three requirements as "conditions precedent" to coverage for "any claim" based "in whole or in part" on the work of independent contractors. A condition precedent is "an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due." *Wright v. State Farm Mut. Auto. Ins. Co.*, 196 P.3d 1000, 1007 n.14 (Or. 2008) (citations and quotation marks omitted). Because it is undisputed that Phoenix did not comply with the conditions, and because Phoenix does not argue its noncompliance was excused, there is no coverage for any claim in the underlying lawsuit arising "in whole or in part" from the work of independent contractors.

The complaint in the underlying lawsuit alleges that Phoenix failed to adequately supervise and check the work of subcontractors. There is no allegation that Phoenix independently performed any non-supervisory work such as window or roof installation. Accordingly, there is no damage that could have resulted *solely* from Phoenix's actions. This means that every claim in the underlying lawsuit arose, at least in part, from the work of the independent contractors. The entire lawsuit is subject to the Contractors Special Conditions, with which Phoenix did not comply.[1]

---

[1] Defendants argue that plaintiff must show that "all of the claims against defendants in the [underlying] lawsuit were limited solely to claims based on work performed by independent contractors" to avoid liability. Defs.' Opp. to Pl.'s Mot. Summ J. 8. That argument inexplicably ignores the Contractors Special Conditions' clear application to claims based "in part" on the

PAGE 7 - OPINION AND ORDER

Defendants argue that the Phoenix's failure to comply with the Contractors Special Conditions does not bar coverage for two reasons. First, they cite *Lusch v. Aetna Cas. & Sur. Co.*, 538 P.2d 902 (1975), for the proposition that "Oregon law bars an insurer from relying on a technical defense . . . unless the insurer can demonstrate it was prejudiced." Defs.' Opp. to Pl.'s Mot. Summ. J. 7. To the contrary, *Lusch* stands for the much narrower proposition that an insurer cannot rely on the insured's failure to inform it of a coverage-triggering event within the contractual timeframe to deny coverage unless the insurer can show prejudice. In *Lusch*, the court discussed a hypothetical situation in which an insured was involved in a serious car accident. 538 P.2d at 904. The insured never reported the accident to the insurer, but a third party told the insurer right away. *Id.* The court held that even if the contract made notification within a certain timeframe a condition precedent to coverage, that condition should not be enforced because the third party's notification gave the insurer adequate time to investigate the accident. *Id.*

If the issue here were noncompliance with only the third Contractor Special Conditions, requiring the insured to maintain records evidencing compliance with the other conditions, the parallel to *Lusch* would be strong. Failure to keep records of indemnification policies is the sort of technical non-compliance that might justify an inquiry into prejudice to the insurer. But the first and second Contractor Special Conditions are not technical provisions similar to the notice timeframe at issue in *Lusch*. Whether an insured has indemnification agreements with its independent contractors bears directly on the insurer's exposure to liability. The insurer sets prices for coverage based on that exposure. When the insured fails to secure such indemnification agreements, there is no analog to *Lusch* court's example in which a third party notifies the insurer of the accident. No

---

work of independent contractors.

PAGE 8 - OPINION AND ORDER

third party is going to take out an insurance policy protecting the insurer in claims against subcontractors. Moreover, plaintiff *was* prejudiced by Phoenix's noncompliance. In defending the underlying lawsuit, the absence of indemnification agreements with the subcontractors limited plaintiff's defenses. Specifically, plaintiff could not assert a contractual indemnification defense regarding Phoenix's share of the liability.

Defendants next argue that the Contractors Special Conditions are contrary to Oregon law because they require the insured to enter into indemnification agreements that would absolve the insured of liability for its own wrongdoing, contrary to Oregon Revised Statutes § 30.140(1). By their terms, this is not what the Contractors Special Conditions require. Instead, they require an independent contractor to agree to indemnify the insured for liability arising from the negligence of the independent contractor. There is no conflict between such an indemnification agreement and Oregon law. Indeed, this sort of agreement is contemplated by the statute, which specifically provides that section 30.140 does not affect agreements requiring indemnification for liability arising out of the fault of the indemnitor. Or. Rev. Stat. § 30.140(2); *see also Montara Owners Ass'n v. La Noue Dev., LLC*, 353 P.3d 563, 567 (Or. Ct. App. 2015) (holding an indemnification agreement enforceable to the extent it related solely to the negligence of the indemintor).

Because the Contractors Special Conditions were not satisfied, and because they were a condition precedent to coverage for all claims arising in the underlying lawsuit, plaintiff has no duty to indemnify Phoenix. The only remaining question is whether it had a duty to defend. I conclude it did not. On the face of the underlying complaint, all claims arose, at least in part, from acts of the subcontractors. The only allegations regarding Phoenix's negligence involve the failure to adequately supervise the work of the subcontractors; thus, every claim against Phoenix necessarily

PAGE 9 - OPINION AND ORDER

arose, in part, from acts of the subcontractor whose work was to be supervised. The uncontroverted evidence in the summary judgment record shows that plaintiff knew of Phoenix's failure to comply with the Contractors Special Conditions before the complaint was filed in the underlying lawsuit. Plaintiff had no duty to defend in that lawsuit because it was clear none of the claims were covered under the insurance policy.

## CONCLUSION

Plaintiff's Motion for Summary Judgment (doc. 16) is GRANTED. This Court hereby declares that plaintiff had no duty to defend Phoenix in the underlying lawsuit and has no duty to indemnify Phoenix for the settlement amount or for any other damages arising from the underlying lawsuit. Summary judgment is also entered in favor of plaintiff on FHC's counterclaim for breach of contract.[2]

IT IS SO ORDERED.

Dated this 2nd day of January 2017.

_____
Ann Aiken
United States District Judge

---

[2] FHC did not assert a counterclaim in its initial Answer. On December 19, 2016, this Court granted FHC's stipulated motion to file an Amended Answer. Doc. 40. The proposed Amended Answer includes a single counterclaim for breach of contract. *See* Doc. 41 Ex. A ¶¶ 36-39. This opinion necessary resolves that counterclaim and entitles plaintiff to summary judgment in its favor on that claim. The third-party claims asserted by FHC in the Amended Answer are unaffected by this opinion.

PAGE 10 - OPINION AND ORDER